IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| BRITTANY KELLEY and<br>WINDY KELLEY,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>WILLIAM R. KELLEY, JR.,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 18-cv-11692<br><br>Hon. Indira Talwani |

**UNITED STATES' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR AN ORDER THAT
NO CAPITAL GAINS TAXES BE PAID ON THE SALE OF 64 REVERE STREET**

THE UNITED STATES OF AMERICA hereby responds in opposition to Plaintiffs' Motion for an Order that No Capital Gains Taxes be Paid on the Sale of 64 Revere Street (the "Plaintiffs' Motion," ECF No. 1-3 at 4-14).[1] In their motion, the Plaintiffs' seek to prohibit the Receiver from paying capital gains taxes that were incurred during the receivership; they ask that the Court direct the Receiver to pay the funds reserved for the capital gains taxes over to them. The Court should deny this motion for two reasons: (1) the order appointing the receiver specifically requires that the capital gains taxes be paid before any distribution to the Plaintiffs, which is a requirement that the Plaintiffs explicitly and implicitly agreed to; and (2) the common law and 28 U.S.C. § 3713 (the "Federal Priority Statute") give the capital gains taxes priority over the Plaintiffs' judgment liens because the taxes are administrative expenses of the receivership and the Plaintiffs affirmatively asked the state court to appoint the Receiver.

---

[1] As this is a removed action and this response addresses papers that were filed in the state court and subsequently filed on ECF, the government will cite to documents filed on ECF as "ECF No." The pin cite will refer to the ECF page numbers. Where appropriate the government will also identify the state-court docket number assigned to the papers as "State Court Doc. No."

1

**Background**

**1. Procedural History Bringing the Priority Dispute to this Court.**

This case involves a receivership arising from money judgments entered in a state-court tort action.[2] The Plaintiffs, Brittany Kelley and Windy Kelley, each were granted a $5 million judgment against the Defendant, William R. Kelley, Jr, in Plymouth County Superior Court in October, 2014. With pre- and post-judgment interest, the two judgments total over $18.5 million and render the Defendant insolvent. *See* Plaintiff's Motion, ECF No. 1-3 at 4-5. (The accrued interest reflects the 12-percent interest rate applied to judgments by Mass. Gen. Laws Ann. ch. 231, § 6B.)

On December 19, 2016, the Plaintiffs petitioned the state court to appoint a receiver to take control of all of the Defendant's assets. *See* State Court Docket, ECF No. 20-1 at 14, State Court Doc. No. 245. The Defendant opposed the motion.

On February 22, 2017, the state court appointed John C. Ottenberg as the Receiver for the Defendant. *See generally* Memorandum of Decision and Order on Plaintiffs' Motion to Appoint Receiver (the "Receivership Order"), ECF No. 12-2 at 2-12.

The Receiver sold a real property located at 64 Revere Street (the "Revere Property") for $6.4 million. *See* Plaintiffs' Motion, ECF No. 1-3 at 7. The Receiver reserved proceeds from the sale of the Revere Property to pay the federal and state capital gains taxes incurred from the sale; he actually made a $340,000 estimated tax payment to the Commonwealth of Massachusetts for the capital gains taxes. However, the Plaintiffs asked the Receiver to delay any payment to the IRS for the federal capital gains taxes. *See id*. at 7-8.

---

[2] The "facts" set forth in this memorandum are largely derived from the papers filed by the Plaintiffs and Defendant in the state-court action. The government was a stranger to these events and has not had an opportunity for formal discovery on the facts.

On March 29, 2018, the Plaintiffs filed the Plaintiffs' Motion requesting that the state court direct the Receiver not to pay the federal capital gains taxes and instead distribute the proceeds reserved for that purpose to the Plaintiffs. *See* State Court Docket, ECF No. 20-1 at 16, State Court Doc. No. 272; Plaintiffs' Motion, ECF No. 1-3 at 14. The Defendant opposed the motion. *See* Defendants' Opposition to Plaintiffs' Motion for an Order that No Capital Gains Taxes Be Paid on the Sale of 64 Revere Street (the "Defendant's Opposition"), ECF No. 1-3 at 15-58.

The state court issued an "Order of Notice" directed to the IRS. *See* Order of Notice, ECF No. 1-3 at 2-3. The state court ordered the IRS to file "any opposition or response it may have to the Plaintiffs [sic] Motion," and further ordered that if the IRS failed to respond, "any claim it may have against the Receiver, the Receivership estate, the Plaintiffs, or the defendant, William R. Kelley, Jr. based upon capital gains taxes for 2017 from the sale of the property at 64 Revere Street shall be jeopardized." *Id*. at 2. The United States removed this action from the state court. *See* ECF No. 1.

**2. The Receivership Order and Agreed Liquidation Plan Require Capital Gains Taxes Be Paid.**

As noted above, the Plaintiffs petitioned the state court to appoint the Receiver for the Defendant. The Defendant had opposed the Plaintiffs' motion. *See* Memorandum of Defendant William R. Kelly, Jr. in Opposition to Motion to Appoint Receiver, attached to Defendant's Opposition as Exhibit 1, ECF No. 1-3 at 25-34. In opposing the receivership, the Defendant raised the issue of capital gains taxes; he stated that the proposed order appointing a receiver "makes no provision for the timely and lawful payment of federal and state income taxes or potential capital gains taxes upon a property sale…." ECF No. 1-3 at 33.

On February 22, 2017, the state court appointed the Receiver for the Defendant. *See* Receivership Order, ECF No. 12-2 at 5, ¶ 1. The state court charged the Receiver with:

3

collecting and taking possession of all of the Defendant's assets, *id*.; managing, controlling, and caring for those assets, *id*. at 6-7, ¶ 5; disposing of (i.e., liquidating) those assets under "commercially reasonable terms," *id*. at 5-7, ¶¶ 2 and 5; and distributing the proceeds from liquidation of those assets, *id*. at 9-10, ¶ 12. Regarding the distribution of the proceeds, the Receivership Order provides: "[t]he receiver is authorized to disburse to the plaintiffs … the proceeds from the liquidation of any Asset, after the payment of all applicable federal and state income taxes or capital gains taxes, until the defendant's obligations to the plaintiffs … are satisfied in full." *Id*. at 9-10, ¶ 12.

On July 20, 2017, the state court entered an Order Authorizing Liquidation Plan (the "Liquidation Plan," attached to Defendant's Opposition as Exhibit 3, ECF No. 1-3 at 41-52). The Liquidation Plan was a stipulated order agreed to by the Plaintiffs and Defendant. The Liquidation Plan provided that:

> Nothing in this Order should be interpreted to amend or in any way diminish the authority granted to the Receiver in the February 22, 2017 order appointing the Receiver…. To the extent that any provision of this Order is inconsistent with or contradicted by the Receiver Order, the Receiver Order shall control.

ECF No. 1-3 at 41, ¶ 2.

The Defendant maintains that the payment of the capital gains taxes on the real estate sales was part of the agreement memorialized in the Liquidation Plan. *See* Defendant's Opposition, ECF No. 1-3 at 16-17. In an email exchange between counsels for the Plaintiffs and Defendant dated July 11. 2017, which was attached to the Defendants' Opposition as Exhibit 2, ECF No. 1-3 at 36-37, the parties were negotiating the Liquidation Plan, and counsel for the Plaintiff acknowledged that the "[t]he receiver order indicates that capital gains taxes will be paid. I believe that it is also the receiver's position that the estate will pay income taxes for whatever income is generated by the estate during the receivership, but defer to him on this point." ECF No. 1-3 at 37.

4

The Plaintiffs agreed to allow the Receiver to pay capital gains taxes from the proceeds of the sale of another one of the Defendant's properties in Hull, MA—a property that the Defendant had sold in 2016 prior to the appointment of the Receiver. *See* Defendant's Opposition, ECF No. 1-3 at 15 ("… the defendant had, with court and the plaintiffs' approval, sold a lot at 28 Holbrook Avenue, Hull, and an amount had been reserved for the payment of capital gains taxes which was being held by counsel for the plaintiffs in an escrow account."). The Plaintiffs and Defendant entered into a Joint Stipulation Regarding Release of Escrow Funds (attached to Defendant's Opposition as Exhibit 4, ECF No. 1-3 at 54-55) whereby they stipulated to use $65,092 from the sale proceeds to pay the capital gains taxes. *See* ECF No. 1-3 at 54. The Plaintiffs and Defendant also stipulated that "any additional amounts owed in connection with the filing of Plaintiffs [sic] 2016 tax returns shall be paid by Mr. Ottenberg in his capacity as receiver." *Id*. at 55. While the text of the stipulation stated that the Receiver should pay any additional amounts in connection with the "Plaintiffs['] 2016 tax returns," it is clear from the context of the stipulation that this was a typo and the parties intended to have the Receiver pay any additional taxes owed by the Defendant for his 2016 tax returns.

**Argument**

1. **The Receivership Order Requires the Receiver to Pay the Capital Gains Taxes Before Disbursing Any Funds to the Plaintiffs.**

The capital gains taxes incurred as a result of the receivership should be paid because the Receivership Order specifically directs the Receiver to pay such taxes—this is where the Court's analysis of the issue should begin and end.

The appointment of a receiver for an individual is an extraordinary remedy that a Massachusetts court may impose using its powers in equity. *See New England Theatres v. Olympia Theatres*, 287 Mass. 485, 492 (1934); *Wax v. Monks*, 327 Mass. 1, 3 (1951). However, "an equity receiver does not merely inherit an owner's rights; the receiver is an officer of the

5

court entrusted with administration of the property." *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994) (citations omitted). Because "[r]eceivership is an equitable remedy," the court determines "who shall be charged with the costs of receivership." *Id.* (citations omitted); *see also In re Indian Motorcycle Litig.*, 307 B.R. 7, 16 (D. Mass. 2004) ("in a receivership proceeding of this nature, this court sits in equity, and the allocation of priority lies within the trial court's sound discretion"). Generally speaking, however, "the expenses and fees of a receivership are a charge upon the property administered." *Gaskill*, 27 F.3d at 251.

Here, the Receivership Order authorizes the Receiver "to disburse to the plaintiffs … the proceeds from the liquidation of any Asset, *after* the payment of all applicable federal and state income taxes or capital gains taxes…." Receivership Order, ECF No. 12-2 at 9-10, ¶ 12 (emphasis added). Thus, the state court ordered the Receiver to pay the capital gains taxes before any proceeds were disbursed to the Plaintiffs. This was totally within the state court's equitable authority, and as discussed in the sections below, entirely appropriate under the law. Factors bearing on the state court's discretion would logically include: (1) that Plaintiffs did not loan funds in exchange for mortgages but rather are judgment creditors, so there is no "reliance" interest; (2) that Plaintiffs affirmatively sought the Receiver rather than having suffered one at the behest of another interested party; (3) that sales by the Receiver benefit the Plaintiffs compared to a sheriff's sale, by eliminating redemption rights and enabling marketing of properties in the same manner as would voluntary sales; (4) that if the Defendant had attempted to satisfy the judgment through voluntary sales, he would be able to pay tax on gain and use remaining funds to make payments on the judgment until his assets were exhausted; (5) that the judgments have increased by approximately 50-percent with post-judgment interest; and (6) that given the expanded amount of the judgments, and Defendant's age, his remaining assets are such

6

that if the taxes are not paid from the sale proceeds, they will likely never be collectible in large part, and the Defendant will be subject to these tax liabilities for the rest of his life.

In addition, the requirement that the Receiver pay the capital gains taxes was a bargained-for-position, which the Plaintiffs agreed to, explicitly and implicitly, by entering into the Liquidation Plan. Five months after the Receivership Order was entered, the Plaintiffs and Defendant negotiated and agreed to the stipulated Liquidation Plan, which reinforced the provisions contained in the Receivership Order by stating that the Liquidation Plan was not meant to amend or conflict with any provisions of the Receivership Order. *See* Liquidation Plan, ECF No. 1-3 at 41, ¶ 2. Since the Receivership Order required the payment of capital gains taxes before any distributions to the Plaintiffs, in stipulating to the Liquidation Plan, the Plaintiffs explicitly accepted that provision.

The Defendant provided additional evidence that the Plaintiffs explicitly agreed to the payment of capital gains taxes as part of the stipulated Liquidation Plan. *See* Defendant's Opposition, ECF No. 1-3 at 16. In email correspondence between counsel for the Plaintiffs and Defendant, in which they were negotiating the Liquidation Plan, counsel for the Plaintiff stated, "[t]he receiver order indicates that capital gains taxes will be paid. I believe that it is also the receiver's position that the estate will pay income taxes for whatever income is generated by the estate during the receivership, but defer to him on this point." ECF No. 1-3 at 37. Thus, the Plaintiffs acknowledged that the Receivership Order required the payment of capital gains taxes and used this information during the negotiations leading to the agreed Liquidation Plan to lull the Defendant into believing the issue was resolved and would not be reopened.

Moreover, the course of dealing between the Plaintiffs and Defendant support the Defendant's position—the Plaintiffs had agreed to the payment of the capital gains taxes from the proceeds of another property that the Defendant had sold prior to the appointment of the

receiver. *See* ECF No. 1-3 at 54-55. This course of dealing tends to confirm that the Plaintiffs had agreed to having the capital gains taxes paid out of the proceeds of the receivership when they entered into the Liquidation Plan.

Of course, the Plaintiffs deny that they explicitly agreed to the payment of capital gains taxes as part of the negotiations leading to the Liquidation Plan; however, they implicitly agreed to such a provision by failing to object to the Receivership Order when they agreed to the Liquidation Plan. The Liquidation Plan was entered by the state court on July 20, 2017, approximately five months after the Receivership Order was entered on February 22, 2017. Thus, while the Plaintiffs contend that the provision requiring the payment of capital gains taxes in the Receivership Order was a mistake (see the discussion below), they knew that the Receivership Order required the payment of capital gains taxes—which their counsel acknowledged in the email to Defendant's counsel (*see* ECF No. 1-3 at 37)—and they specifically agreed to the provisions in the Receivership Order when they submitted the Liquidation Plan. The Plaintiffs cannot now change the Receivership Order that they agreed to in the stipulated Liquidation Plan *after* the sale of the Revere Property that incurred approximately $1.6 million in capital gains taxes.[3]

---

[3] The Plaintiffs seek to amend the Receivership Order under Rule 60(b) as alternative relief. Their primary argument is that the Receivership Order does not require the capital gains taxes to be paid because the order requires only that "applicable" capital gains taxes be paid, and they contend that the capital gains taxes are not "applicable" because their judgment liens give them first priority. *See* Plaintiffs' Motion, ECF No. 1-3 at 9. This is a tortured reading of the Receivership Order under which no capital gains taxes could possibly be "applicable" capital gains taxes, assuming *arguendo* the Plaintiffs are correct about the law absent an agreement. As demonstrated below, the Plaintiffs are not correct about the law.

### 2. Plaintiffs' Motion to Amend the Receivership Order under Rule 60(b) is Untimely (and Unwarranted).

Recognizing that the plain language of the Receivership Order requires the payment of the capital gains taxes, the Plaintiffs have asked that the Court revise the Receivership Order under Mass. R. Civ. P. 60(b). *See* Plaintiffs' Motion, ECF No. 1-3 at 11-13. They argue that the state court made a "mistake" in requiring the capital gains taxes to be paid prior to any distribution to the Plaintiffs. *See id*. at 12. However, Plaintiffs' motion under Rule 60(b) is untimely (and unwarranted).[4]

Motions under Rule 60(b) must be made within a "reasonable time" and "not more than one year after the judgment, order or proceeding was entered or taken." Mass R. Civ. P. 60(b). Thus, the 1-year mark is an absolute deadline, but a Rule 60(b) motion is still untimely if it is not raised in a "reasonable time." *See Chavoor v. Lewis*, 383 Mass. 801, 806, n.4 (1981) ("The question of reasonable time, unlike the absolute one-year bar, is addressed solely to the judge's discretion").

The Plaintiffs failed to bring their motion within a reasonable time because they first agreed to the Liquidation Plan and then waited until after the Receiver sold the Revere Property, incurring approximately $1.6 million in capital gains taxes, before seeking to change the Receivership Order. The Plaintiffs should have moved to amend the Receivership Order soon after it was entered, or after they acknowledged that the Receivership Order required the taxes to be paid while negotiating with the Defendant on the Liquidation Plan, or at the very least, before they agreed to the Liquidation Plan. It was unreasonable to wait until after providing the Defendant assurances that the Receivership Order already covered his concerns regarding the

---

[4] The appointment of a receiver is a final decree subject to appeal. *See Wax*, 327 Mass. at 1. Therefore, to seek relief from the order, the party must move under Rule 60(b).

9

taxes, after entering into the agreed Liquidation Plan reaffirming the terms of the Receivership Order, and after incurring $1.6 million in capital gains taxes, to then seek to amend the Receivership Order.

Furthermore, the Plaintiffs' Rule 60(b) motion was not even "made" within 1 year of the Receivership Order; therefore, the Receivership Order cannot be amended on the basis that there was a mistake. *See Chavoor*, 383 Mass. at 803–04 ("… a judge has no power to vacate a judgment based on 'mistake, inadvertence, surprise, or excusable neglect' if the motion to vacate is filed more than a year after entry of judgment").

The Receivership Order was entered on February 22, 2017.  Plaintiffs' Motion was not filed (i.e., made) with the state court until March 29, 2018. *See* State Court Docket, ECF No. 20-1 at 16, State Court Doc. No. 272.  Presumably, the Plaintiffs argue that they "made" the motion within the 1-year deadline because they served the Defendant with Plaintiffs' Motion under Mass. R. Superior Ct. 9A on January 31, 2018.  However, serving the Defendant in accordance with Mass. R. Superior Ct. 9A does not satisfy the jurisdictional-bar imposed by Rule 60(b)'s 1-year deadline.  *See*, *e.g.*, *Blaney v. Lowell Gen. Hosp.*, 76 Mass. App. Ct. 910 (2010) (holding that the "statute of repose" had run on a medical malpractice action because the plaintiff had not timely "filed" a motion for leave to amend even though the plaintiff had served the motion on the defendants pursuant to Mass. R. Superior Ct. 9A before the statute of repose expired).  Rule 60(b) requires the motion be "made," and motions are only "made" to the court.

Nevertheless, even if the Plaintiffs' motion under Rule 60(b) were timely, such relief is unwarranted.  They contend that the state court made a "mistake" in requiring the Receiver to pay the capital gains taxes before distributing any proceeds.  *See* Plaintiffs' Motion, ECF No. 1-3 at 12.  However, as discussed in the sections below, the state court did not err; rather, the state court simply imposed an equitable distribution scheme that is required by the common law (and

is also consistent with Federal Priority Statute).

   3. **The Plaintiffs Sought the Appointment of the Receiver so the Administrative Expenses, Including the Capital Gains Taxes, Prime the Judgment Liens.**

      a. **Administrative expenses have priority over the judgment liens.**

Under the common law, administrative expenses of a receivership take priority over a secured creditor, if the secured creditor is the party that sought the appointment of the receiver. *See Turner v. State Wharf & Storage Co.*, 263 Mass. 92, 98 (1928) ("Another exception to the general rule [that the liens on property in the care of a receiver cannot be subordinated to the charges and expenses of a receivership] is to be found when it appears that the mortgagee has itself sought the appointment of a receiver."). This is so even if the expense does not distinctly benefit the security interest holder, i.e, while "[a]round the country, the general rule is that receivership expenses may be paid out of encumbered property only to the extent the lien creditor benefits from or consents to the receivership," an exception exists for a creditor who affirmatively requests a receiver, as recognized in *Iowa Dep't of Human Servs. v. Cmty. Care, Inc.*, 861 N.W.2d 868, 874 (Iowa 2015):

> If a lienor avails himself of the receivership, or if the activities of the receiver have been of benefit and advantage to the lienor, it is but right and fair that he should be required to pay his just burden of the costs, including allowances to the receiver.
>
> A lienor consenting to appointment of receiver and, therefore, to a liquidation of the insolvent's affairs through the receivership instrumentality, is an exception to rule that receiver's allowances are not entitled to outreach the priority of existing liens.

*Id.* at 876 (quoting 2 Ralph E. Clark, A Treatise on the Law and Practice of Receivers § 638, at 1070–72 (3d ed. 1959)); *compare Comm'r of Ins. v. Conveyancers Title Ins. & Mortg. Co.*, 300 Mass. 457, 467 (1938) ("But the security holders did not seek the receivership and enjoy no such special and distinct benefit as has sometimes been held to justify imposing expenses of a receivership upon secured creditors"). This is a common-sense legal principle: where the secured creditor is involuntarily drawn into the receivership, then it should not have to pay

administrative expenses unless those expenses directly benefitted the secured creditor; however, if the secured creditor petitioned the court for the appointment of the receiver, then it is primed by all of the administrative expenses because the petitioning creditor has not only "consented" to the receivership, but it has sought the receivership for its presumed overall benefit.

The economic benefit to the secured creditor in selling property via a receiver, as opposed to a sheriff's sale, more than justifies sacrificing priority to all foreseeable expenses of administration. The advantage of using a receiver is the increased sale price that the receiver can demand because, unlike an execution sale, the receiver can market the property for sale to the purchaser without a right of redemption. *See* Mass. Gen. Laws Ann. ch. 236, § 33 (providing one year for the debtor to redeem property that is sold on execution). Thus, in this case, the Receiver sold the Revere Property for $6.4 million; however, if the Plaintiffs were forced to sell the property via a sheriff's sale, they would have had a significantly reduced selling price. We can conservatively estimate an execution-sale-discount at 30-percent below the fair market value—so in this case, if the Revere Property were sold at a sheriff's sale, it likely would have sold for no more than $4.4 million. The $2 million difference more than makes up for the administrative expenses incurred (i.e., capital gains taxes that total approximately $1.6 million).[5]

### b. Capital gains taxes incurred when receivers sell property are administrative expenses of the receivership.

Capital gains taxes incurred when a receiver sells property are administrative expenses of the receivership. *See United States v. Federal Deposit Ins. Corp.*, 899 F. Supp. 50, 55 (D.R.I.

---

[5] Counsel for the Plaintiffs acknowledged the advantages of using a receivership to collecting on judgments in an article in the Massachusetts Lawyers Weekly dated April 1, 2017, entitled, "Collecting judgment against individual," which is available at https://masslawyersweekly.com/reprints/collecting-judgment-against-individual/. The article specifically touts the appointment of the receiver in this case and discusses the advantages of using a receiver.

1995) (stating, "[i]t is widely recognized that taxes that become due during administration of a receivership are operating expenses for which the receiver is liable") (citations omitted); *see also In re Anolik*, 207 B.R. 34, 37 n.3 (Bankr. D. Mass. 1997) (and cases cited therein) ("It is well-established that capital gains taxes incurred by a Chapter 7 trustee in liquidating an estate are administrative expenses under § 503(b)(1)(B)(i)."); *Reading Co. v. Brown*, 391 U.S. 471, 484 (1968) (… "state and federal taxes accruing during a receivership have been held to be actual and necessary costs of an arrangement"); *Biddle v. Cox Lime, Stone & Lime Prod. Corp.*, 47 F. Supp. 570, 571 (E.D. Pa. 1942) ("Taxes assessed against real estate in the possession of the receiver during the period of the receivership are to be regarded as a cost of the administration and are, therefore, like other costs, entitled to priority in payment. … In fact the preference to which such taxes are entitled is not dependent upon whether or not they are a lien"); *Matter of I. J. Knight Realty Corp.*, 431 F. Supp. 946, 957 (E.D. Pa. 1977) (holding that a capital gains tax "arising exclusively from the involuntary conversion" of property that was destroyed by a fire during a receivership, "should be treated as an administrative expense of the receivership").

In *Federal Deposit Ins.*, the court held, correctly, that the capital gains taxes were administrative expenses of the receivership, *see* 899 F. Supp. at 55; however, the court ultimately decided that the capital gains taxes would not be paid ahead of the secured creditors, *see id*. at 57. In that case, however, the secured creditors did not request the receivership. The debtor "was petitioned into receivership … in the case of *Southern Industries of Clover, Ltd. v. Budlong Manufacturing, Co., Inc.* (Case no. 88–3826)." *Id*. at 52. It is important to note the case-caption that resulted in the receivership because it shows that the secured creditors who ultimately received the proceeds from the sale did not ask the court to appoint the receiver.[6] In any event,

---

[6] That the secured creditors in *Federal Deposit Ins.* were not the petitioning creditors is revealed

the receiver liquidated the debtor's assets giving rise to capital gains taxes. *Id*. at 53. The receiver did not pay the capital gains taxes, however, and instead he paid the secured creditors' claims. *Id*. at 53. The government then filed suit seeking to recover the funds paid to the secured creditors. *Id*. at 54.

In deciding the priorities between the administrative expense for the capital gains taxes and the secured creditors' liens, the *Federal Deposit Ins.* court applied Rhode Island law regarding receiverships, which in turn looked "to federal bankruptcy law for guidance." *Id*. The court recognized that pre-receivership tax debts incurred by the debtor and post-receivership tax debts incurred by the receiver are treated differently stating, "[i]t is widely recognized that taxes that become due during administration of a receivership are operating expenses for which the receiver is liable." *Id*. at 55. Thus, the court held that the capital gains taxes were administrative expenses of the receivership. *Id*. It then applied bankruptcy law in deciding that the capital gains taxes were not "chargeable" to the secured creditors' collateral under 11 U.S.C. § 506(c), which is limited to expenses that benefit the secured creditor. *Id*. at 55. The court held that the capital gains taxes did not benefit the secured creditors so those administrative expenses would not be paid before the secured creditors' claims. *Id*.

It was at least arguably appropriate for the court in *Federal Deposit Ins.* to analogize to bankruptcy law only because, unlike the Plaintiffs in this case, the secured creditors in *Federal Deposit Ins.* were not the petitioning creditors that "sought the appointment of the receiver." *Turner*, 263 Mass. at 98. Ninety-nine percent of bankruptcies are filed voluntarily by the debtor. And, involuntary bankruptcies can be sought by creditors only if the property value exceeds their

---

by the government's argument that "the secured creditors consented to the payment of the tax because they did not object to the appointment of a receiver or the sale of the property." *Federal Deposit Ins.*, 899 F. Supp. at 56. The government would not have to make an argument that the secured creditors "failed to object to the appointment of a receiver" if the secured creditors were actually the creditors that sought the appointment of the receiver.

liens, so that a surplus will presumably exist.  *See* 11 U.S.C. § 303(b)(1).

This factual distinction is critical because a secured creditor that seeks the appointment of a receiver is primed by all of the administrative expenses of the receivership, regardless of whether an expense benefits the creditor.  *See supra*.  Indeed, there is no need for an analysis as to whether an administrative expense directly benefits the secured creditor who seeks the appointment of the receiver because it is presumed that the petitioning creditor believed there would be an overall benefit that more than covers the costs of the receivership, coupled with the inequity of "robbing Peter to pay Paul"—i.e., by leaving receivership debts unpaid.  For example, damages for torts committed by the receiver are still afforded an administrative expense status preferred over the secured creditor who petitions the court to appoint the receiver.  *See, e.g.*, *Brown v. Winterbottom*, 98 Ohio St. 127, 134 (1918) ("While the rule of extending protection to mortgagees obtains in ordinary cases, it does not apply where personal injuries have been sustained because of the negligence of a receiver whom the lienee had expressly demanded for the business management of the property.").

Here, the Plaintiffs petitioned the state court for the appointment of the Receiver, so all of the administrative expenses of the receivership prime their judgment liens.  The entire receivership is for the Plaintiffs' benefit in that they are using a receivership partly because sale of properties through a receiver leads to substantially increased sale prices; the Plaintiffs cannot avoid having the capital gains taxes arising from the Receiver's sales paid as an administrative expense.  *See Cent. Vermont Ry. Co. v. Marsch*, 59 F.2d 59, 62 (1st Cir. 1932) ("[T]he general creditors by their bill … specifically asked for and obtained the appointment of receivers and had them directed to take possession of the lands on which the attachment existed and the taxes afterwards accrued…. Having done so, the general creditors cannot now complain if they have to bear the burden of the taxes which their representatives incurred or assumed in so doing.").

15

In addition to the factual distinction, the *Federal Deposit Ins.* court applied the wrong law—Rhode Island state law—to the government's claim for administrative expenses. As discussed in the next section, the court should have applied the Federal Priority Statute, 28 U.S.C. § 3713, once it determined that the government had a claim for administrative expenses.

4. **Because the Capital Gains Taxes are Administrative Expenses, the Federal Priority Statute Determines Priority—Not the Federal Tax Lien Act.**

Where the United States has an administrative claim in a state-court receivership, the Federal Priority Statute determines the priority. The Federal Priority Statute, first enacted in 1797 and largely unchanged until today, has a clear command and broad sweep. *See United States v. Waddill Co.*, 323 U.S. 353, 355 (1945) (stating that the language of the statute is "broad and sweeping, and on [its] face, admit[s] of no exception to the priority of the claims of the United States."). The statute provides that a claim of the United States "shall be paid first" when an insolvent debtor commits an "act of bankruptcy." 31 U.S.C. § 3713(a); *see also* Mass. Gen. Laws Ann. ch. 206, § 31 ("The following claims shall, in the settlement of estates by receivers, be entitled to priority in the order named: First, Debts due the United States or debts due, or taxes assessed by, the commonwealth or a county, city or town therein."). Here, the capital gains taxes were incurred during the receivership, so they are an administrative expense of the receivership, and as an administrative expense owed to the United States, the Federal Priority Statute requires the payment of the capital gains taxes before any distribution to the Plaintiffs.

The Plaintiffs contend that the Federal Tax Lien Act, and specifically 26 U.S.C. ("IRC") § 6323, governs the priority of the capital gains taxes vis-à-vis the Plaintiffs' judgment liens. However, as noted above, the government is not asserting a claim based on a federal tax lien arising under IRC § 6321 (the priority of which is affected by § 6323)—the government is entitled to payment for the capital gains taxes because those taxes are an administrative expense

of the receivership.⁷  Accordingly, the Federal Tax Lien Act does not apply in these circumstances.  The Federal Priority Statute applies because the priority dispute is not between competing liens; rather, the priority dispute is between the Plaintiffs' pre-receivership judgment liens and an administrative expense for taxes incurred during the receivership that is accorded priority because it is an administrative expense.

While not cited in their brief, the Plaintiffs' argument implicates *United States v. Estate of Romani*, 523 U.S. 517 (1998), but that case is distinguishable because it did not involve taxes incurred during a receivership.  In *Romani*, a judgment creditor had perfected its judgment against property belonging to a decedent before the government filed notices of federal tax liens against the same property.  *Id.* at 519-20.  Thereafter, the debtor passed away and his estate was insufficient to pay both claims.  *Id*. at 520.  The Supreme Court therefore had to confront a "plain inconsistency" between the Federal Tax Lien Act and the Federal Priority Statute.  *Id*. at 533.  That is, the Federal Priority Statute mandated that the government had to be paid first, but the Federal Tax Lien Act mandated that the government's *anti-mortem* lien was not valid against a previously-filed judgment lien.  Because the Federal Tax Lien Act spoke directly to the priority dispute at issue in the case, the Supreme Court held that the Federal Tax Lien Act should control.  *Id*. at 533-34.

However, the "inconsistency" identified in *Romani* only arises where the government asserts the priority of a tax lien arising *before* the receivership against another creditor's prior perfected security interest.  Here, the government is making a claim for a tax liability that arose

---

⁷ The fact that the United States has an unfiled tax assessment lien does not require the United States to rely on that lien where the tax is an administrative expense.  Bankruptcy cases provided a useful analogy here.  The IRS does not lose priority for prepetition taxes less than three years old under 11 U.S.C. § 507(a)(8), or for administrative tax claims under § 503(b) and § 507(a)(2) simply because it also has an assessment lien, or even a filed lien notice.

17

*during* the receivership. There was no tax lien that existed on or before the commencement of the receivership and the government is not asserting a right to be paid now because of a federal tax lien.

Moreover, there is no conflict with the legislative intent of the Federal Tax Lien Act in according priority to an *administrative* tax. In the fact pattern of *Romani*, a judgment lien was intended by IRC § 6323 to prime a tax liability not protected by a previously filed notice of federal tax lien. But it is unreasonable to attribute to Congress a desire to carve out only federal taxes from the priority normally accorded even to *unsecured* administration expenses.[8] It would be anomalous to give administrative priority to state taxes and exclude federal taxes where it is not even possible for the IRS to file a lien notice prior to a creditor who requests a receivership in which the tax is only then incurred. As discussed above, a tax liability that arises during a receivership is treated as an administrative expense of the receivership, not as a pre-receivership debt. *See People of State of Michigan, by Haggerty, v. Michigan Trust Co.*, 286 U.S. 334, 344 (1932) ("[W]e think the annual taxes accruing while the receiver was in charge must be deemed expenses of administration …"); *S. Ry. Co. v. United States*, 306 F.2d 119, 126 (5th Cir. 1962) ("…a practical view requires that, quite apart from the question of relative priority, taxes be regarded as an essential element of the cost of the operation of the business administered under a receivership."); *Ohio Casualty Insurance Co. v. Freshwater Construction Co.*, 32 Ohio N.P. (N.S.) 464, 1933 WL 2370, at *2 (Ohio Com. Pl. 1933) ("Furthermore, it seems to be almost universally held … that taxes accruing during receivership upon property in the hands of a receiver shall be treated and paid as part of the costs and expenses of administration.").

---

[8] Under § 3713(a)(1)(B), priority concerns only "debts of the deceased debtor," which does not include debts incurred by the decedent's estate. Under § 3713(a)(1)(A), which includes a receivership for a living person, and § 3713(b), priority is given to any "claim" of the government over any "debt of the person or estate," thus plainly including a government "claim" for a tax incurred by the receivership.

18

Taxes incurred by a decedent during his lifetime and pre-receivership debts of an insolvent debtor are governed by different priority regimes than an administrative tax expense of a receivership. For pre-receivership debts, competing liens existing at the time of the commencement of an estate (a bankruptcy, receivership, decedent's estate, etc.) will be governed by "first in time first in right" priority, as provided by the Federal Tax Lien Act and recognized in *Romani*. *See Romani*, 523 U.S. at 526. However, secured creditors are not protected against administrative expenses incurred by the receiver, and these administrative expenses include post-receivership taxes. *See supra*; *also MacGregor v. Johnson-Cowdin-Emmerich, Inc.*, 39 F.2d 574, 576 (2d Cir. 1930) ("The taxes accruing after the receivers entered are in a different position … Having elected to enter, they took it cum onere, and the taxes, which were a condition upon their continued occupation, were as much a part of their expenses as heat, custody or current upkeep. So far as we have found, courts have universally regarded them as part of the receivers' expenses ….") (citations omitted). Thus, where the secured creditor petitioned the court for the receivership, the receiver's administrative expenses, which include the taxes incurred during the receivership, are paid ahead of the secured creditor. *See supra*. And, under 31 U.S.C. § 3713, they have priority over other administration expenses.

Thus, there is no inconsistency between the Federal Priority Statute and the Federal Tax Lien Act that this Court must confront. *See United States v. Moore*, 423 U.S. 77, 82–83 (1975) ("Only the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of [the Federal Priority Statute]."). Because the government is asserting a claim for a tax incurred by the Receiver that it could not possibly have protected by filing notice of federal tax lien before the Receiver was appointed, no other federal statute applies to determine the priority of the capital gains taxes incurred when the Receiver sold the Revere Property; accordingly, the Federal Priority Statute applies.

The cases cited in Plaintiffs' Motion—with the exception of *Federal Deposit Ins.* that the government addressed above—stand for the uncontroversial proposition that a first-in-time secured creditor primes a later-filed federal tax lien under the Federal Tax Lien Act. But like *Romani*, these cases are not applicable here because we are *not* dealing with competing pre-receivership liens. The issue before the Court is whether the Plaintiffs' pre-receivership judgment liens have priority over an administrative expense for capital gains taxes that were incurred during the receivership. Like the Receivership Order and the state common law, the Federal Priority Statute requires an administrative expense for capital gains taxes be paid before the Plaintiffs' judgment liens.[9]

## Conclusion

For the foregoing reasons, the government asks that the Court deny the Plaintiffs' Motion and order the Receiver to pay the capital gains taxes incurred by the sale of the Revere Property.

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Carl L. Moore*
CARL L. MOORE
ROBERT J. WILLE, JR.
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
(202) 307-5892 (v) / (202) 514-5238 (f)
Email: Carl.L.Moore@usdoj.gov

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 1, 2018.

*/s/ Carl L. Moore*

---

[9] In any event, regardless of 28 U.S.C. § 3713, the United States is entitled to assert rights accorded by state law. *See* 28 U.S.C. § 3003(b) (Federal Debt Collection Act "shall not be construed to curtail or limit the right of the United States under . . . State law – (1) to collect taxes"). If state taxes have administrative priority over the judgment liens of parties that request a receiver, so do the federal taxes. We understand that the Plaintiffs may challenge priority of the state taxes, but submit that the Supreme Court of Massachusetts would hold that a judgment lien creditor who requests a receiver is held to have consented to allow the receiver to pay taxes.