UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRITTANY KELLEY and<br>WINDY KELLEY,<br><br>      Plaintiffs,<br><br>v.<br><br>WILLIAM R. KELLEY, JR.,<br><br>      Defendant. | *<br>*<br>*<br>*<br>*<br>*   Civil Action No. 18-cv-11692-IT<br>*<br>*<br>*<br>* |

AMENDED MEMORANDUM AND ORDER[1]

October 2, 2019

TALWANI, D.J.

    Before the court are motions and filings from Plaintiffs Brittany and Windy Kelley, Defendant William R. Kelley, Jr., Receiver John Ottenberg, and the United States, asking the court to resolve: (1) whether a Receivership Order allows for Plaintiffs' perfected judgment liens to be paid before federal capital gains taxes that arise from the sale of properties sold to satisfy such liens; and (2) if not, whether the Receivership Order should be modified. For the reasons set forth below, the Receivership Order as issued does require the Receiver to pay such taxes prior to payment to Plaintiffs. Consistent with the Tax Lien Act, the court modifies the Receivership Order, *nunc pro tunc*, to reflect the priority of Plaintiffs' liens' over federal capital gains taxes that arise from the sale of property sold to satisfy such liens. Accordingly, Plaintiffs' Motion for Order that No [Federal] Capital Gains Taxes Be Paid on the Sale of 64 Revere Street [31] is

---

[1] This Amended Memorandum and Order supersedes the court's Memorandum and Order of April 12, 2019 [62].

ALLOWED in part and the Receiver's <u>Motion for Instructions, in the Nature of an Action for Interpleader, Regarding Distribution of Funds in his Custody</u> [50] and <u>Motion for Instructions Regarding the Payment of 2018 Taxes to Massachusetts and Utah</u> [59] are ALLOWED.

I.   Background

In 2014, Plaintiffs obtained a civil judgment against Defendant for approximately $15 million in Plymouth County Superior Court. Mem. of Decision and Order on Pl.'s Mot. to Appoint Receiver ("Receivership Order") 1 [31-2]. With interest, the judgment amounted to nearly $19 million in 2017, when the Superior Court found the record warranted the extraordinary remedy of an appointment of a receiver "to secure the payment of some portion of the damages that are due to plaintiffs." <u>Id.</u> at 2. The Superior Court appointed the Receiver, and directed him to take custody of Defendant's property and income, and to liquidate the Defendant's assets to effect the satisfaction of the Plaintiffs' judgment and the Defendant's other creditors with a distribution of the proceeds. <u>Id.</u> at 4. The Receiver was directed to sell the assets "subject to any prior liens" that are valid, outstanding, and superior to the Plaintiffs' judgment, and until the assets could be disposed of on commercially reasonable terms, to maintain the property, and to pay "taxes, assessment, or mortgage installments falling due. . ." <u>Id.</u> at 5. The Receiver was also directed to disburse to the Plaintiffs (and another) "the proceeds from the liquidation of any [a]sset, after the payment of all applicable federal and state income taxes or capital gains taxes, until the defendant's obligations to the plaintiffs [and another] are satisfied in full." <u>Id.</u> at 7-8.

Plaintiffs and Defendant reached an agreement for the liquidation of Defendant's properties and the court entered an <u>Order Authorizing Liquidation Plan</u> ("Liquidation Plan") 39-47 [1-3]. The Liquidation Plan primarily addresses Defendant's obligations and the distribution

of proceeds to the Defendant. As a part of the Liquidation Plan, Defendant "release[d]…any estate of homestead created under Mass. Gen. Laws c. 188 s. 3 or 4, pursuant to G.L. c. 188 s. 10(a)(2), and otherwise waive[d] any homestead rights." After the sale of one of Defendant's properties, a dispute arose as to the payment of capital gains taxes. Specifically, Plaintiffs argued that "applicable" capital gains taxes to be paid following the sale of the property included only those with a priority over Plaintiffs' claims, no such taxes had a priority over Plaintiffs' claims, and therefore, no capital gains taxes were "applicable" under the Receivership Order. Pls.' Mot. for an Order that No Capital Gains Taxes Be Pain on the Sale of 64 Revere Street ("Pls.' Mot.") [31]. Defendant disagreed, contending that, under the Receivership Order, the capital gains taxes that arose from the sale of the property needed to be paid prior to satisfying Plaintiffs' judgment. Trial Court Record at 507 [32].

      The Receiver paid state taxes on the sale of the property and agreed to hold the payment of federal taxes until the court could rule on Plaintiff's motion. Once that motion was filed, the Superior Court issued a notice to the Internal Revenue Service, inviting the United States' response. Trial Court Record at 2 [1-3]. The United States removed this case pursuant to 28 U.S.C. § 1442, Notice of Removal [1], and responded to Plaintiff's motion here. Upon joint motion of the United States, the Receiver, and Plaintiffs, the court partially remanded the case to state court, retaining jurisdiction over the United States' claims. Order of Partial Remand [24]. This court retained jurisdiction limited to resolving "any issues regarding the priority of the claims by the Plaintiffs and United States relating to the withheld proceeds [of the sale of the 64 Revere Street property]" and over "disputed monies from the sale proceeds [of other properties sold pursuant to the Receivership Order]." Order of Partial Remand at ¶¶ 3-4 [24].

After proceedings began in this court and prior to the end of 2018, the Receiver sold additional properties in Massachusetts and Utah. Plaintiffs, the United States, and the Receiver jointly filed a motion for a stipulated order, to which Defendant did not object. The court entered the Stipulated Order Allowing the Payment of Federal Taxes with Right to Recovery if Plaintiffs Prevail [56], which provided for the Receiver to pay federal capital gains taxes on the properties sold by the Receiver, without any waiver of rights, and for those federal capital gains taxes to be returned, if appropriate, after a final order of the court. Stipulated Order [56]. The Order also instructed the Receiver to retain the funds necessary to pay taxes on the sale of the Massachusetts and Utah properties, and to retain money that was to be paid to Defendant under the Liquidation Plan, also pending final order of the court. Id. The Order further instructed the Receiver to pay Plaintiffs a portion of the proceeds of the property sales. Id.

II. Analysis

Plaintiffs request that the court find that the Receivership Order, as issued, mandates the Receiver to pay Plaintiffs funds towards satisfaction of their judgment from the sale of property, without first paying taxes that arise upon that sale. The United States seeks an order declaring that the United States is entitled to payment of federal capital gains taxes by the Receiver before funds are distributed to Plaintiffs. Defendant agrees that the Receivership Order provides for payment of taxes, arguing that he agreed to waive his homestead rights based upon that understanding and expressing concern about tax liability. The Receiver seeks the court's interpretation of the Receivership Order and instructions about the further disbursement of taxes.

1. "Applicable Taxes" Under the Receivership Order as Issued

Plaintiffs first argue that "applicable" taxes under the Receivership Order is limited to tax claims that take priority over Plaintiffs' claims, which Plaintiffs contend are no claims. The

relevant part of the order states, "[t]he receiver is authorized to disburse to the plaintiffs…the proceeds from the liquidation of any Asset, *after the payment of all applicable federal and state income taxes or capital gains taxes*, until the defendant's obligations to the plaintiffs… are satisfied in full." Receivership Order ¶12 [31-2] (emphasis added). The Receivership Order thus contemplates that "applicable taxes" are to be paid after the sale of the asset and prior to disbursements of payments to Plaintiffs. The United States argues that "applicable taxes" are taxes that apply to the proceeds of a sale when Defendant's assets are sold. Plaintiffs contend "applicable taxes" are taxes that would take priority over Plaintiffs' judgment. In context, the government's interpretation is more plausible as "applicable" can be understood to refer to the specific sale, and the sentence read in this manner contemplates taxes that arise from the liquidation of an asset, and not taxes for which prior liens have been asserted.

This interpretation is confirmed by reading this sentence in the context of another provision of the order. To the extent that Plaintiffs argue that "applicable taxes" refers to taxes or liens in effect prior to Plaintiffs judgment, such liens are addressed in a separate provision of the Receivership Order, where the Receiver is instructed to sell Defendant's assets "subject to any prior liens." Id. ¶5 [31-2]. Under Plaintiffs' reading, the term "applicable taxes" would thus be surplusage. Instead, the "applicable" taxes referred to in paragraph twelve are the taxes that arise upon the sale of property.

   2. Modification of Receivership Order

      (a) Court's Authority to Consider Plaintiffs' Alternative Request to Modify the Receivership Order

Both Defendant and the United States challenge the court's authority to consider Plaintiffs' alternative request to modify the Receivership Order.

The United States argues Plaintiffs' motion is barred by Fed. R. Civ. P. 60's one-year limit for a motion. Gov.'s Opp. 9 [28]. That Rule provides that the court "may relieve a party . . . from a final judgment, order, or proceeding," based on certain grounds, Fed. R. Civ. P. 60(b), and sets a one-year time line for certain of these grounds. Fed. R. Civ. P. 60(c). Although Plaintiffs also cites this Rule as authority for the motion,[2] Rule 60 does not control here. As explained in the Advisory Committee Notes to the 1946 Amendment which added the word "final" to Rule 60(b), "[t]he addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." Here, the Receivership Order is an interlocutory order, that by its own terms permits any of the parties to seek the court's modification of the order. Receivership Order at 11 [31-2]. Accordingly, Rule 60(b) poses no bar to Plaintiffs' request for modification.

Defendant argues that the motion should be disallowed because it was not brought "within a reasonable time." As discussed above, Plaintiffs were notified of the size of the federal capital gains tax liability in December 2017, subsequently addressed their concerns with the Defendant and Receiver, and served their motion on Defendant on January 31, 2018. See Pl.'s Mot. 11 [31]. After Plaintiffs granted Defendant's request for additional time, and Defendant then served his opposition on March 7, 2018, and Plaintiffs promptly filed the motion packet. See State Court Record 22 [1-3] (date of service of Defendant's opposition). The court finds this

---

[2] When Plaintiffs filed their motion in state court, they sought relief pursuant to Mass. R. Civ. P. 60(b). The rules are substantively the same. As such, the court applies the federal rule.

to be a reasonable time after Plaintiffs learned of the size of the federal capital gains tax liability which caused Plaintiffs to consider the issue.

Defendant argues further that by agreeing to the Liquidation Plan, Plaintiffs have waived any rights to seek to amend the Receivership Order. State Court Record, 17-19 [1-3]. This is at odds with the text of the Order Authorizing Liquidation Plan Ex. 3 [1-3], which specifies that "the parties are free to seek appropriate relief from the Court, as they deem necessary." Moreover, the Receivership Order also permits modifications, and is controlling over any conflict with the Liquidation Plan. State Court Record 41 [1-3]. Accordingly, Plaintiffs may petition the court for modification of the Receivership Order.

(b) The Merits of Plaintiffs' Federal Tax Priority Argument

Plaintiffs' motion for a modification is best understood as a motion to modify the order of payments of the sales proceeds to reflect the priority of Plaintiffs' judgment creditor lien over federal tax claims that arise from the sales. The core question, therefore, is whether Plaintiffs' perfected judgment liens takes priority over federal capital gains taxes that arise from the sale of property that is sold to satisfy the prior lien.

Both sides rely on federal law in support of their arguments but disagree on the relevant statute. The Tax Lien Act directly addresses this question, awarding priority to judgment lien creditors over tax liens where proper notice of the tax lien has not been filed prior to the perfection of the judgment lien. 26 U.S.C. § 6323(a). It is undisputed that the Plaintiffs have a perfected judgment lien against Defendant's property and that there is no federal tax lien.

The United States relies on the Federal Priority Statute, 31 U.S.C. § 3713, rather than the Tax Lien Act, in support of its claim. The government contends that the taxes are administrative expenses of the receivership and that administrative expenses have priority over the judgment

liens under the Federal Priority Statute. Gov't Opp. at 11 [28].[3] The United States bases this argument, in part, on the theory that Plaintiffs sought the Receiver's appointment and benefits from the Receiver selling the property. Id. at 11-12. However, Plaintiffs only sought the Receiver's appointment as a result of the Defendant's bad faith in satisfying the judgment, and the receivership was recognized as an extraordinary remedy based on the specific history before the state court. See Receivership Order 489 n. 2 [32]. Seeking a receiver does not necessarily forfeit a statutorily established lien priority, and the court finds no reason on the facts here to so hold. Further, the United States' argument would create a bizarre and inconsistent result. If the Defendant had simply sold the property himself to satisfy the judgment, the Plaintiffs' lien would take priority over any future tax lien. If the government's argument is followed, the Defendant would be rewarded for his misconduct which resulted in the imposition of the receivership, as his liabilities to the United States would be satisfied from the amounts he owes to the Plaintiffs that are secured by Plaintiffs' prior lien.

In a similar case, the Supreme Court addressed the statutory conflict between the Tax Lien Act and the Priority Statute. In United States v. Estate of Romani, 523 U.S. 517 (1998), the Supreme Court concluded that Congress intended the Tax Lien Act's provisions to supersede potentially conflicting provisions of the Priority Statute "when the Government is claiming a preference in the insolvent estate of a delinquent taxpayer." Estate of Romani, 523 U.S. at 532. Though Defendant is not yet a delinquent taxpayer, Estate of Romani is a useful guidepost for

---

[3] The Receivership Order does treat certain taxes as administrative expenses, due prior to payment of amounts due to Plaintiffs. The Receivership Order thus directs that "[u]ntil such time as the receiver can dispose of the Assets on commercially reasonable terms," he is to "pay any taxes, assessments, or mortgage installments falling due during the period of receivership." Receivership Order ¶ 5 [31-2]. But these administrative expenses by their terms are those incurred prior to the sale of property.

addressing the circumstance at issue here: where the Defendant's assets will not satisfy the judgment lien in its entirety and the sale of those assets generates tax liability. Accordingly, the court finds in accordance with Estate of Romani that the Tax Lien Act governs the order of priority here for the purposes of determining what capital gains taxes are applicable, and that under the Tax Lien Act, Plaintiffs' perfected judgment liens take priority over the United States' claims for capital gains taxes.[4] Accordingly, the Receivership Order is modified as set forth below.

### III.     Further Instructions to the Receiver

In light of the parties' prior filing regarding the Stipulated Order, the court anticipates that one or more parties may appeal this ruling. Defendant has also argued that his waiver of his homestead rights in the Liquidation Plan was based upon his reliance on the Receivership Order prior to its modification by the court. Under the Liquidation Plan , the Defendant may seek modification of the Liquidation Plan or the Receivership Order, but such motion should be addressed by the Superior Court, once the federal issues raised here have been finally resolved. The Receiver has diligently sought the court's guidance on payment of state taxes and instructions for disbursement of funds while the dispute is pending. The Receiver is instructed as set forth below.

### IV.     Conclusion

The court hereby orders as follows:

---

[4] Plaintiffs did not move for, or provide authority for, modification of the Receivership Order as to state capital gains taxes, and the court declines to address the issue *sua sponte*.

1. Plaintiffs' Motion for Order that No Capital Gains Taxes Be Paid on the Sale of 64 Revere Street [31] is ALLOWED in part in that the Receivership Order is modified, *nunc pro tunc*, as follows:

   ¶12. The receiver shall deposit and/or, in his discretion, supervise the deposit of all monies subject to this appointment, including but not limited to, monies obtained through liquidation of the defendant's Assets in some national bank, trust company, co-operative bank, or savings bank. The receiver is authorized to disburse to the plaintiffs and/or Ms. Cuddy the proceeds from the liquidation of any Asset, after the payment of all applicable state and federal income taxes or state capital gains taxes (but not after payment of federal capital gains tax that arise from the sale), until the defendant's obligations to the plaintiffs and Ms. Cuddy are satisfied in full.

2. The Receiver's Motion for Instructions, in the Nature of an Action for Interpleader, Regarding Distribution of Funds in his Custody [50] and Motion for Instructions Regarding the Payment of 2018 Taxes to Massachusetts and Utah [59] are ALLOWED. The Receiver is instructed as follows:

   A.   The Receiver shall continue to hold funds for the payment of state taxes as provided for in the Stipulated Order [56] and shall additionally reserve funds for penalties for late payment of those taxes. The issues of priority between the Plaintiffs and the taxing authorities of Massachusetts and Utah are to be determined in the appropriate state courts. In the event that the appropriate state court determines that either or both taxing authorities have a priority over Plaintiff as to such funds, and the United States claims it has a priority over the taxing authority or authorities, the Receiver shall continue to hold such funds to allow the United States to remove the issue of priorities between the United States and the state taxing authorities to the appropriate federal court.

   B.   The Receiver shall continue to hold the Defendant's funds, as set forth in the Stipulated Order [56] until any appeal of this Memorandum and Order is

    finally resolved. The Receiver shall also hold from amounts due to the Plaintiffs the amount of funds Defendant could reasonably claim are due to him based on his giving up homestead rights, pending resolution of this issue, if timely raised, on remand to the state court. In the event that there is a final determination that these amounts should be awarded to Defendant, the Receiver shall continue to hold such funds to allow the United States to remove the issue of priorities between the United States and the Defendant to federal court.

3. The case is REMANDED to the State Court, effective in sixty days if no appeal is timely filed, or if an appeal is filed, when the appeal is finally resolved.

IT IS SO ORDERED.

October 2, 2019                                                        /s/ Indira Talwani  
                                                                             United States District Judge